IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

J.G.J.                                          :
                                                :
                Petitioner,                     :    3:26-cv-706
                                                :    (JUDGE MARIANI)
        v.                                      :
                                                :
JESSICA SAGE,                                   :
Warden, Federal Correctional                    :
Institution, Lewisburg, *et al.*,               :
                                                :
                Respondents.                    :

## MEMORANDUM OPINION

Petitioner J.G.J. ("Petitioner" of "J.G.J."), a noncitizen from Haiti with a pending Temporary Protected Status ("TPS") application, seeks habeas relief. J.G.J. filed a TPS application in November 2024 and is *prima facie* eligible for TPS, and therefore he cannot be removed from the United States and is entitled to work authorization while his application remains pending. On or about January 19, 2025, J.G.J. was arrested for and charged with strangulation in violation of Pennsylvania law ten days before the Laken Riley Act ("LRA") was signed into law by President Trump. Pub. L. No. 119-1, 139 Stat. 3 (2025) (amending 8 U.S.C. § 1226(c)). The strangulation charge was dismissed in April 2025, and J.G.J. was released from state custody and taken into Respondents' custody, where remains to this day.

In Count I he alleges that Respondents cannot detain him "on the basis of his immigration status." 8 U.S.C. § 1254a(d)(4). Specifically, he claims that because his TPS

application remains pending, and he is *prima facie* eligible for TPS, he cannot lawfully be detained by Respondents based on his immigration status under the 8 U.S.C. § 1226(c), as amended by the LRA. *See* 8 U.S.C. § 1254a(d)(4)("An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States."). Respondents claim they are not detaining J.G.J. solely on the basis of his immigration status. Instead, they are detaining him because he was arrested for and charged with strangulation and that his detention without bond is mandatory under Section 1226(c). Because the plain language of the TPS statute only confers protections against detention based on immigration status to TPS holders, not TPS applicants, the Court finds that TPS protection from detention only applies to persons who hold TPS, and not those applicants who are *prima facie* eligible for TPS. Accordingly, it will reject J.G.J.'s statutory claim under 8 U.S.C. § 1254a and dismiss Count I of the petition.

In Count II, J.G.J. brings an as applied constitutional challenge to his detention under Section 1226(c). According to JGJ, because he is *prima facie* eligible for TPS, and therefore cannot be removed, his detention—with or without bond—violates his due process rights under the Fifth Amendment to the United States Constitution. In Count III, Petitioner seeks alternative relief, claiming his prolonged civil immigration detention pursuant to 8 U.S.C. § 1226(c) violates his due process rights under the Fifth Amendment, and seeks a prompt individualized bond hearing under *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020). Because J.G.J.'s civil immigration

detention has become unreasonable, the Court will grant Petitioner's request for relief in Count III and order a prompt individualized bond hearing before an Immigration Judge ("IJ"). In that hearing, Respondents must prove by "clear and convincing evidence that continued detention is necessary." *German Santos*, 965 F.3d 213.

## I.    **INTRODUCTION**

On March 18, 2026, Petitioner J.G.J., a citizen of Haiti residing in the United States since his arrival at a port of entry in March 2023 and release on humanitarian parole, filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] (Doc. 1). Petitioner, who applied for TPS in November 2024, alleges he is *prima facie* eligible for TPS and thus cannot be detained based on his immigration status. J.G.J. has been detained since April 8, 2025, under 8 U.S.C. § 1226(c) and, as such, is not eligible for a bond hearing under the statute.[2]

In the petition, Petitioner challenges his civil immigration detention. In Count I, Petitioner alleges a violation of the Immigration and National Act ("INA"). (*Id.*, ¶¶ 76-80). Specifically, he alleges a violation of 8 U.S.C. §§ 1254a(a)(4)(B), 1254a(a)(d)(4), because he "is prima facie eligible for temporary protected status and, as such, is entitled to the benefits

---

[1]    The Court conditionally granted J.G.J.'s motion to proceed under a pseudonym, and Respondents indicate that they do not oppose the motion. (Doc. 9 at 1 n.1).

[2]    The Petition names as Respondents Jessica Sage, Warden of the FCI Lewisburg; Todd Lyons, Acting Director, ICE ("ICE"); Kristi Noem, Secretary of the United States Department of Homeland Security ("DHS"); Pamela Bondi, United States Attorney General; and John Rife, Acting Field Office Director, ICE ERO Philadelphia Field Office. (Doc. 1 ¶¶ 17-21).

of temporary protected status and cannot be detained." (*Id.*, ¶ 79). In Count II, Petitioner alleges a violation of the Fifth Amendment's due process clause, claiming his detention "is not rationally related to any immigration purpose," "is not the least restrictive mechanism for accomplishing any legitimate purpose the government could have in imprisoning Petitioner," and because the government "lacks any statutory authorization." (*Id.*, ¶¶ 81-83). In Count III, Petitioner alleges a violation of the Fifth Amendment's due process clause, claiming his prolonged detention without a constitutionally adequate bond hearing is unreasonable and violates due process. (*Id.*, ¶¶ 84-96).

Petitioner seeks various forms of relief. He seeks an Order declaring that his detention violates both 8 U.S.C. § 1254a and the due process clause of the Fifth Amendment. (*Id.* at 29). He further seeks an order granting his petition and ordering his immediate release from custody and an order enjoining Respondents from detaining Petitioner so long as the termination of Haitian TPS is not in effect.[3] (*Id.* at 30). Counsel further requests attorney's fees and costs pursuant to the Equal Access to Justice Act. The Court held an evidentiary hearing and heard oral argument on April 1, 2026.

---

[3]     Petitioner also seeks various forms of alternative relief. (Doc. 1 at 30) ("g) "In the alternative, issue a Writ of Habeas Corpus ordering Respondents to release Petitioner from custody on his own recognizance or under parole, bond or reasonable conditions of supervision, on the ground that his continued prolonged detention by ICE violates his due process rights; h) Or, in the alternative, conduct an individualized bond hearing at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner's continued detention is justified because he poses a danger of a flight risk that cannot be remedied by other conditions of release; i) Or, in the alternative, order an immediate and constitutionally adequate bond hearing before an immigration judge at which DHS bears the burden to demonstrate that Petitioner's continued detention is necessary, consistent with the Third Circuit's decision in *German Santos*, and that the Immigration Judge consider Petitioner's ability to pay a bond.").

## II.    <u>BACKGROUND</u>

### A.  <u>TPS & Haiti's Designation of Haiti as TPS</u>

When Congress passed the Immigration Act of 1990, it created a humanitarian program known as TPS.  Pub. L. 101-649, 104 Stat. 4978 (Nov. 29, 1990).  It allows the Secretary of the Department of Homeland Security,[4] "after consultation with appropriate agencies of the Government, [to] designate a foreign state" for TPS.  8 U.S.C. § 1254a(b)(1).  The Secretary of DHS "may designate a foreign state for TPS when nationals of that state cannot return there safely due to armed conflict, natural disaster, or other extraordinary and temporary conditions, unless the Secretary finds that permitting the noncitizens to remain temporarily in the United States is contrary to the national interest of the United States." *Nat'l TPS Alliance v. Noem*, 150 F. 4th 1000, 1010 (9th Cir. 2025) (internal citation and quotation marks omitted).  Once a foreign state has been designated, certain noncitizens from that country may apply for protection from immigration-related removal and detention.  8 U.S.C. § 1254a(a), (c), (d)(4).  "Congress created TPS to provide

---

[4]    Although the TPS statute refers to the "Attorney General," Congress has since delegated that authority to Secretary of the Department of Homeland Security.  6 U.S.C. § 557; *see also Nielsen v. Preap*, 586 U.S. 392, 398 n.2 (2019) ("We replace 'Attorney General' with 'Secretary' because Congress has empowered the Secretary to enforce the Immigration and National Act, 8 U.S.C. § 1101 *et seq.*, though the Attorney General retains the authority to administer removal proceedings and decide relevant questions of law.") (citation omitted).

stability, predictability, and a brief reprieve from deportation to qualifying citizens of designated countries."[5] *Nat'l TPS Alliance v. Noem*, 166 F.4th 739, 748 (9th Cir. 2026).

"TPS shields foreign nationals present in the United States from removal during armed conflict, environmental disasters, or other extraordinary conditions in their homeland." *Sanchez v. Sec. United States Dept. of Homeland Sec.*, 967 F.3d 242, 244-25 (3d Cir. 2020), *aff'd*, 593 U.S. 409 (2021). DHS first designated Haiti for TPS status in 2010, following a devastating 7.0 magnitude earthquake. *Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 264 (E.D.N.Y. 2005). DHS "subsequently extended this designation and redesignated Haiti for TPS status multiple times based on continuing harms from the earthquake." *Id.*; *see also Nat'l TPS Alliance*, 166 F.4th at 752 ("Haiti's TPS was repeatedly extended due to ongoing complications caused by the earthquake, as well as a cholera outbreak.") (collecting TPS extensions).

On July 1, 2024, DHS Secretary Mayorkas extended Haiti's TPS status from August 4, 2024, through February 3, 2026. *Miot v. Trump*, _ F. Supp. 3d __, 2026 WL 266413, at *6 (D.D.C. Feb. 2, 2026) (citing 89 Fed. Reg. 54484 (July 1, 2024)). On February 24, 2025, Secretary Noem issued a "partial vacatur" of Secretary Mayorkas July 2024 extension and redesignation of Haiti for TPS. That partial vacatur "purported to shorten Haiti's designation period from the existing end date of February 3, 2026, to August 3, 2025." *Id.*

---

[5]    The reprieve from deportation "is guaranteed for no more than 18 months at a time." *National TPS Alliance*, 166 F.4th at 748 (citing 8 U.S.C. § 1251a(b)(2)(B), (b)(3)(C)).

On July 1, 2025, Judge Cogan of the Eastern District of New York held that Secretary Noem lacked statutory authority to issue the partial vacatur. *Haitian Evangelical*, 789 F. Supp. 3d at 275. Secretary Noem thereafter issued a formal notice "purporting to terminate Haiti's TPS status as of September 2, 2025." *Miot*, 2026 WL 266413, at *6 (citing 90 Fed. Reg. 28760 (July 1, 2025)). Litigation ensured.

In *Miot*, Judge Reyes of the United States District Court for the District of Columbia granted the plaintiffs' motion to stay Secretary Noem's decision to terminate Haiti's TPS designation under the Administrative Procedures Act. 5 U.S.C. § 701 *et seq*. The United States Court of Appeals for the District of Columbia Circuit denied the Government's motion to stay. *Miot v. Trump*, No. 26-5050, 2026 WL 659420 (D.C. Cir. Mar. 6, 2026)  On March 16, 2026, the Supreme Court of the United States deferred ruling on the Government's motion to stay, granted certiorari before judgment, and set oral arguments for April 20, 2026.[6] *Trump v. Miot,* 2026 WL 731087.

The TPS statute permits "immigrants from designated countries [to] remain in the United States and receive work authorization" under certain circumstances. *Haitian Evangelical*, 789 F. Supp. 3d. at 264-65 (citing 8 U.S.C. § 1254a). A foreign state's "TPS designation does not automatically mean its citizens receive TPS." *Miot*, 2026 WL 266413, at *3. Rather, "[a] foreign national is eligible for TPS only if she meets several criteria,

---

[6]    As counsel for Petitioner and Respondents both agreed at oral argument, because the Supreme Court declined to stay the district court's order postponing the effective date of DHS Secretary Noem's termination of TPS for Haiti, Haiti's TPS status remains in effect and is not terminated.

including being otherwise admissible and registering for TPS within a specific time frame."[7] *Id.* (citing 8 U.S.C. § 1254a(c); 8 C.F.R. § 244.2)). A noncitizen waives eligibility for TPS, "if, among other things, she has been convicted of a felony or two or more misdemeanors in the United States." *Id.* (citing 8 U.S.C. § 1254a(c)(2)(B)); *see also Nat'l TPS Alliance*, 166 F.4th at 755 ("The statute also sets forth the procedure by which foreign nationals of TPS-designated states can qualify and apply for work authorization and protection from removal, as well as the Secretary's authority to withdraw a foreign national's TPS.").

The TPS statute mandates that United States Customs and Immigration Services ("USCIS") "shall grant employment authorization to and shall not remove from the United States any noncitizen who establishes" he is *prima facie eligible* for TPS status "until USCIS makes a final determination of their eligibility."[8] *Mansor v. United States Citizenship & Immigr. Servs.*, 2025 WL 4274509, at *2 (W.D. Wash. Dec. 1, 2025) (citing 8 U.S.C. § 1254a(a)(4)). The TPS further provides that "an alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4). "That status, once

---

[7]     A noncitizen is eligible for TPS: (1) if they have been "continuously physically present in the United States since the effective date of the most recent designation," (2) if they have "continuously resided in the United States since that designation date," and (3) if they are "admissible as an immigrant." 8 U.S.C. § 1254a(c)(1)(A)(i)-(iii).

[8]     The applicable regulations define "prima facie eligible" to mean "eligibility established with the filing of a completed application for [TPS] containing factual information that if unrebutted will establish a claim of eligibility." 8 C.F.R. § 244.1. "Noncitizens apply for TPS using Form I-821 during the registration period established by DHS and are considered" *prima facie eligible* for TPS "if the applicant satisfies the requirements of 8 U.S.C. § 1254a(c)(1)(A)." *Mansor*, 2025 WL 4274509, at *2.

granted, provides a noncitizen with certain benefits for as long as the TPS designation lasts. Those benefits include a statutory prohibition on the noncitizen's removal and detention." *Echeverria v. Janecka*, 2026 WL 44896, at *1 (E.D. Cal. Jan. 7, 2026) (citations omitted).

"However, removal proceedings may continue and a noncitizen 'may be ordered removed while under TPS, though the order remains inexecutable so long as the [noncitizen] remains a TPS beneficiary.'" *Geincharles v. Rokosky*, 2026 WL 266093, at *2 (D.N.J. Feb. 2, 2026) (quoting *Duarte v. Mayorkas*, 27 F.4th 1044, 1054 (5th Cir. 2022)). "The TPS program gives foreign nationals nonimmigrant status, but it does not admit them."[9] *Sanchez v. Mayorkas*, 593 U.S. 409, 413-13 (2021).

## B. The Laken Riley Act

On January 29, 2025, the LRA was signed into law by President Trump. Pub. L. No. 119-1, 139 Stat. 3 (2025) (amending 8 U.S.C. § 1226(c)). The LRA mandates the detention, without bond, of a noncitizen who "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E)(2).8 U.S.C. § 1226(c)(1). Detention must occur "when the alien is released"

---

[9]    "The INA defines 'admission' and 'admitted' as 'the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Sachez*, 967 F.3d at 245 (quoting 8 U.S.C. § 1101(a)(13)(A)). Here, J.G.J. entered the United States at a port of entry, "after inspection and authorization by an immigration officer." *Id.*

from criminal custody on the underlying offense, regardless if they are released on "parole,

supervised released, or probation," and "without regard to whether the alien may be

arrested or imprisoned again for the same offense."[10] *Id.*

Under Section 1226(c), the Attorney General "shall take into custody" any noncitizen

who meets its statutory criteria. 8 U.S.C. § 1226(c). Relevant to J.G.J.'s petition, the LRA

provides two statutory preconditions to apply. First, the noncitizen must be "inadmissible

under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title."[11] 8 U.S.C. §

1226(c)(1)(E)(1). Second, the LRA applies to a noncitizen who "is charged with, is arrested

for, is convicted of, admits having committed, or admits committing acts which constitute the

essential elements of any burglary, theft, larceny, shoplifting, or assault of a law

enforcement officer offense, or any crime that results in death or serious bodily injury to

---

[10]      This "release and re-detain provision predates the LRA's amendment to Section 1226 of the IIRIRA, where it formerly applied only to alien noncitizens convicted of a specified set of crimes, not merely arrests." *Matute v. Jamison*, 2026 WL 461557, at *5 (E.D. Pa. Feb. 18, 2026). "Thus, under the LRA, 'if a noncitizen entered the country illegally and was subsequently convicted or charged,' or arrested for, 'certain crimes, that noncitizen must be detained without a bond hearing while their removal proceedings are pending.'"). *Id.* (quoting *Ndiaye v. Jamison*, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025)).

[11]      Section 1182(a)(6)(A) applies to "Aliens present without admission or parole." 8 U.S.C. 1182(a)(6)(A). In relevant part, it renders inadmissible noncitizens "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i). Section 1182(a)(6)(C) applies to "misrepresentations" and makes inadmissible, in part, noncitizens "who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter." 8 U.S.C. § 1182(a)(6)(C)(i). Section 1182(a)(7) of the INA is entitled "Documentation requirements." In relevant part, it renders inadmissible a noncitizen "who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title." 8 U.S.C. § 1182(a)(7).

another person." 8 U.S.C. § 1226(c)(1)(E)(2).  Courts interpreting the LRA have found that its text does not indicate any Congressional intent to make the LRA retroactive, despite Respondents assertion at oral argument that the LRA is a retroactive statute.[12]  April 1, 2026, Unofficial Hr'g Tr. at 9:19-11:11.

## C. Factual Allegations

Petitioner J.G.J. is a Haitian national who has been in ICE custody since April 8, 2025.  (Doc. 1, ¶ 1).  On March 20, 2023, Petitioner entered the United States at a designated port of entry in Brownsville, Texas utilizing the Customs & Border Protection ("CBP") One application.[13]  (Id., ¶ 22).  CBP processed J.G.J. for a Notice to Appear ("NTA") and paroled him into the United States.  The NTA charged Petitioner as inadmissible pursuant to INA § 212(a)(7)(A)(i)(I) for lacking a valid, unexpired immigrant visa or proper

---

[12]    See, e.g., Matute, 2026 WL 461557, at *5 ("This Court finds (and the Government agrees) that the text of the LRA does not evince any intent on the part of Congress for its retroactive application. . . . Thus, his prior shoplifting arrest cannot justify denying him bond under its provision.") (citing I.N.S. v. St. Cyr, 533 U.S. 289, 316 (2001) ("A statute may not be applied retroactively, however, absent a clear indication from Congress that it intended such a result."); Singh v. Noem, 2026 WL 523216, at *2 (E.D. Cal. Feb. 24, 2026) ("The undersigned finds that the LRA does not justify petitioner's mandatory detention because it is not retroactively applicable to his 2024 arrest.") (citing Vartelas v. Holder, 566 U.S. 257, 262 (2012)); Araiza v. Hermosillo, 2025 WL 3516103, at *2 (W.D. Wash. Dec. 8, 2025) (noting that respondents agreed with petitioner that the Laken Riley Act "does not apply retroactively").

[13]    CBP One "was a mobile application launched by the Department of Homeland Security in October 2020." Coalition for Humane Immigrant Rights v. Noem, 805 F. Supp. 3d 48, 57 n.2 (D.D.C. 2025).  "It enabled noncitizens to book an appointment to appear for inspection at a port of entry, submit information in advance, and potentially obtain parole or admission into the country." Id.  On January 25, 2025, "DHS removed the scheduling functionality from the CBP One app." Id.  Further, DHS has also "renamed the application CBP Home, which it now says facilitates voluntary self-deportation." Id.

travel documents, and instructed Petitioner to appear on October 9, 2024, before an Immigration Judge ("IJ") in Miami.

On February 4, 2024, Petitioner filed an I-589 Application for Asylum, Withholding of Removal, and relief under the Convention Against Torture with the USCIS. (Doc. 1, ¶ 22). On July 1, 2024, DHS Secretary Mayorkas extended Haiti's TPS status from August 4, 2024, through February 3, 2026.  89 Fed. Reg. 54484, 54489 (July 1, 2024).  Petitioner submitted a completed application for TPS on November 28, 2024.  (Doc. 1, ¶ 24).  His application for TPS remains pending before USCIS.  (*Id.*).

Petitioner alleges that the factual information in his TPS application establishes his eligibility for TPS.  (*Id.*, ¶ 25).  Specifically, he alleges "he is a Haitian national who has been physically present in the United States since March 20, 2023, prior to the effective date of the most recent TPS designation for Haiti; that he has resided here since then; that he is not subject to any bars to TPS eligibility because he does not have any criminal convictions; and that he is otherwise admissible under 8 C.F.R. § 244.3." (*Id.*) (citing 8 C.F.R. §§ 244.1, 244.2).  At the evidentiary hearing and oral argument, counsel for Petitioner submitted J.G.J.'s pending TPS application, which contains factual information supporting his assertion that he is *prima facie* TPS eligible.  Thus, the Court agrees with J.G.J. that his pending application establishes that he is *prima facie* eligible for TPS.  April 1, 2026, Unofficial Hr'g Tr. at   21:13-24:9.

12

On or about January 18, 2025, J.G.J. was arrested by the York County Regional Police Department for Strangulation - Applying Pressure to Throat or Neck, in violation of 18 Pa. C.S. § 2718(a)(1). (Doc. 9-2). Following dismissal of the criminal complaint on or about April 8, 2025, ICE officials took Petitioner into custody. (Doc. 1, ¶ 26). J.G.J. was held at the Moshannon Valley Processing Center ("MVPC") in the Western District of Pennsylvania without bond from April 8, 2025, to January 21, 2026. (*Id.*, ¶. 27). He was thereafter transferred to FCI Lewisburg within the Middle District of Pennsylvania.

On August 19, 2025, Petitioner represented himself *pro se* on his Application for Asylum, Withholding of Removal, and relief under the Convention Against Torture. (Doc. 1, ¶ 29). The IJ denied all applications for relief and ordered Petitioner removed to Haiti. (*Id.*). Petitioner timely appealed to the Board of Immigration Appeals ("BIA"). (*Id.*).

On January 21, 2026, Petitioner filed a petition for writ of habeas corpus in the Western District of Pennsylvania arguing that his detention without a bond hearing under 8 U.S.C. § 1226(c) had become unconstitutionally prolonged. (*Id.*, ¶ 30) (citing *J.G.J. v. Oddo.*, No. 3:26-cv-79-WSS (W.D. Pa. Jan. 21, 2026)). On February 12, 2026, Judge Strickman denied the petition, finding that his detention at MVPC did not violate due process and that J.G.J. was lawfully detained without bond pursuant to the LRA based on his arrest

for strangulation.  (*Id.*, ¶ 31).  Petitioner filed a motion for reconsideration, which was denied on March 4, 2026.[14]  (*Id.*, ¶ 32).

On March 12, 2026, the BIA affirmed the IJ's decision, dismissed J.G.J.'s appeal and denied his motion to reopen and remand.  On March 18, 2026, Petitioner filed a Petition for Review and Application for a Stay of Removal in the United States Courts of Appeals for the Third Circuit and received an automatic temporary stay of his removal order.  (*Id.*, ¶ 34) (citing *J.G.J. v. Att'y Gen.*, No. 26-1593 (3d Cir. Mar 18, 2026)).

## III.    **STANDARD OF REVIEW**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Pursuant to 28 U.S.C. § 2241, a federal district court may grant a habeas petition where a petitioner's immigration detention is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Claims brought by immigration detainees seeking relief from their confinement "fall within the core of the writ of habeas corpus."  *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025).  It is well established that a federal habeas corpus petitioner generally

---

[14]    Respondents do not claim that the abuse of the writ doctrine applies to bar Petitioner's habeas petition. *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434 (3d Cir. 2021).  The abuse of the writ doctrine "generally prohibits a petitioner under § 2241 from raising new claims that could have been resolved in a previous action." *Id.* at 442 (internal citation and quotation marks omitted).

has the burden of proving facts entitling him to a discharge from custody.  *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972) (citations omitted).

## IV.    ANALYSIS

Although no party raised the issue, the Court has jurisdiction to consider the petition and grant relief.  *Jennings v. Rodriguez*, 538 U.S. 281, 292-296 (2018); *see Patel v. O'Neil*, 2025 WL 3516865, at *3-4 (M.D. Pa. Dec. 8, 2025).  Further, Petitioner challenge is not "inextricably linked" to his removal proceedings, and the Court of Appeals could not meaningfully address Petitioner's current detention without bond and the attendant constitutional concerns related to his mandatory, and perhaps indefinite, detention for a dismissed criminal charge along with a final order of removal.  *Khalil v.  President, United States*, 164 F.F.4th 259 (3d Cir. 2026).

In the petition, J.G.J. raises one statutory and two constitutional claims.  The Court will address each claim in turn.

### A. Statutory Claim

In Count I Petitioner first claims his detention is unlawful and violates the INA because he is a TPS applicant and is *prima facie* eligible for TPS.  Specifically, he directs the Court to a subsection of the TPS statute which provides that "[a]n alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States."  8 U.S.C. § 1254a(d)(4).  According to J.G.J., although his TPS application remains pending, because he is *prima*

15

*facie* TPS eligible, he cannot be detained based on his immigration status. (Doc. 1 at 78-79).

Respondents assert that J.GJ.'s *prima facie* application for TPS does not prevent his detention under Section 1226(c). (Doc. 9 at 13-23). According to Respondents, "even if Petitioner has a *prima facie* application for temporary protected status," a position which Respondents take no position, he "is still subject to mandatory detention under 8 U.S.C. § 1226(c) because he is not being detained based upon his immigration status . . . **alone**."[15] (Doc. 9 at 20-21) (emphasis added). Rather, "Petitioner is being detained because he is inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) **and** because he was recently arrested for Strangulation - Applying Pressure to Throat or Neck, in violation of 18 Pa. Con. Stat. § 2718." (Id. at 21) (emphasis in original).

The TPS statute and applicable regulations "only list non-detention on the basis of immigration status as a benefit of TPS and do not list a general protection against non-detention as a benefit of TPS." *Gudino v. Lowe*, 2026 WL 526366, at *4 (M.D. Pa. Feb. 25, 2026). The Court must look at the TPS statute to determine if J.G.J., as a TPS applicant with *prima facie* eligibility, cannot be detained.

"When the meaning of a statute [is] at issue, the judicial role [is] to interpret the act of Congress, in order to ascertain the rights of the parties." *Loper Bright Enters. v. Raimondo*,

---

[15]    At oral argument, counsel for Respondents took the position that, upon further review, J.G.J. is not *prima facie* eligible for TPS, although Respondents do not dispute that Petitioner filed a TPS application which remains pending with USCIS. April 1, 2026, Unofficial Hr'g Tr. at   23:24-24:9.

16

603 U.S. 369, 395 (2024) (quotations omitted). "We start, of course, with the statutory text. Unless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006). Courts must read statutes and regulations "as a symmetrical and coherent regulatory scheme." *Arguenta-Orellana v. Att'y Gen. United States*, 35 F.4th 144, 148 (3d Cir. 2022).

Here, the relevant statute states that a noncitizen "provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4). J.G.J. claims that § 1254a(a)(4) extends its protection against detention to person like him—noncitizens who submitted TPS application and are *prima facie* eligible for TPS. At oral argument, counsel for J.G.J. noted that the TPS statute use of the term "provided," in Section 1254a(d)(4), rather than "granted," indicates Congress's intent to extend protections against detention based on immigration status to TPS applicants who are *prima facie* eligible for TPS.[16] The Court disagrees.

The TPS statute provides:

**(4) Temporary treatment for eligible aliens**
**(A)** In the case of an alien who can establish a prima facie case of eligibility for benefits under paragraph (1), but for the fact that the period of registration under subsection (c)(1)(A)(iv) has not begun, until the alien has had a reasonable opportunity to register

---

[16]    According to J.G.J., Congress knew the difference between "provided" TPS and "granted" TPS and did not limit Section 1254a(d)(4)'s application to only those granted TPS, as it did elsewhere in the statute. *See* 8 U.S.C. § 1254a(e) ("With respect to an alien granted temporary protected status under this section..."); 8 U.S.C. § 1254a(f) ("During a period in which an alien is granted temporary protected status under the section...").

during the first 30 days of such period, the Attorney General shall provide for the benefits of paragraph (1).

**(B)** In the case of an alien who establishes a prima facie case of eligibility for benefits under paragraph (1), until a final determination with respect to the alien's eligibility for such benefits under paragraph (1) has been made, the alien shall be provided such benefits.

8 U.S.C. § 1254a(a)(4)(A)-(B).  By its plain terms, Section 1254a(a)(4)(B) limits the benefits extended to TPS eligible noncitizens to the benefits appearing in paragraph (1).  *See Geincharles*, 2026 WL 266093, at *2 (interpreting TPS statute).  The benefits set forth in paragraph (1), are protections from removal from the United States "during the period in which such status in effect" and authorization "to engage in employment in the United States and provide the [noncitizen] with an 'employer authorized' endorsement or other appropriate work permit."  8 U.S.C. § 1254a(a)(1).

The TPS statute's implementing regulations support this interpretation.  8 C.F.R. § 244.10 entitled "Decision and appeal," provides, in relevant part:

(e) Grant of temporary treatment benefits.
    (1) Temporary treatment benefits shall be evidenced by the issuance of an employment authorization document. The alien shall be given, in English and in the language of the designated foreign state or a language that the alien understands, a notice of the registration requirements for Temporary Protected Status and a notice of the following benefits:
        (i) Temporary stay of deportation; and
        (ii) Temporary employment authorization.
    (2) Unless terminated under § 244.13, temporary treatment benefits shall remain in effect until a final decision has been made on the application for Temporary Protected Status.

8 C.F.R. § 244.10(e)(1)-(2); *see also Mansor v. United States Citizenship & Immigr. Servs.*, 345 F.R.D. 193, 199 (W.D. Wash. 2023) ("The temporary treatment benefits are protection

from deportation and employment authorization."). No further benefits, such as protections from detention, are listed in the statute or regulations providing benefits to *prima facie* eligible TPS applicants.

"A fundamental canon of statutory construction is that where a section of a statute does not include a specific term or phrase used elsewhere in the statute, the drafter did not wish such a requirement to apply." *In re Visteon Corp.*, 612 F.3d 210, 224 (3d Cir. 2010) (internal citation and quotation marks omitted). The TPS statute makes clear that Congress "did not intend to give TPS applicants the full protection and benefits that are accorded to TPS recipients." *Geincharles*, 2026 WL 266093, at *3. Accordingly, the Court finds that the plain language of Section 1254a(d)(4) does not apply to J.G.J. because he is a TPS applicant, not a TPS recipient. *See Geincharles*, 2026 WL 266093, at *3 ("By its plain language, § 1254a(d)(4) only applies to noncitizens who are TPS recipients; TPS applicants are protected from removal while their applications are being considered, but not detention. Assuming without deciding that petitioner has established *prima facie* eligibility for TPS statute, § 1254a does not categorically prohibit his detention."); *see also Dassas v. Mordant*, 2026 WL 653686, at *1 (M.D. Fla. Mar. 9, 2026) ("Had Congress intended to give TPS applicants the full protections and benefits that are accorded to TPS recipients, it could have done so. Instead, it delineated the specific benefits available to such persons."). For these reasons, the Court will dismiss Count I of the petition because J.G.J. is not entitled to the relief he seeks under the TPS statute.

## B. Constitutional Claims

In the petition, J.G.J. raises two constitutional claims.  First, he claims that since he cannot be deported under the TPS statute, his detention violates his substantive due process rights.  (Doc. 10 at 7).  Second, and in the alternative, Petitioner raises an as applied constitutional challenges to his prolonged immigration detention under Section 1226(c).  *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020).  Because the Court will grant habeas relief on alternative grounds, it need not address Count II of the petition.

## Count III – Due Process Prolonged Detention Under 8 U.S.C. § 1226(c).

In Count III, Petitioner seeks alternative relief, claiming his prolonged civil immigration detention pursuant to 8 U.S.C. § 1226(c) violates his due process rights under the Fifth Amendment to the United States Constitution.  "8 U.S.C. § 1226(c) requires the Government to detain immigrants with certain criminal convictions pending removal without bond hearings."  *Michelin v. Warden Moshannon Valley Corr. Ctr.*, __ F.4th __, 2026 WL 263483, at *11 (3d Cir. Feb. 2, 2026).  In *Jennings*, the Supreme Court held that "§ 1226(c) does not on its face limit the length of the detention it authorizes." 583 U.S. at 303.  But as applied constitutional challenges to prolonged immigration detention, like those advanced here, are recognized by the United States Court of Appeals for the Third Circuit.  *German Santos*, 965 F.3d 203.

20

To determine whether prolonged detention is unreasonable, a "highly-specific-fact inquiry," this Court must consider "a nonexhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable."[17] *German Santos*, 965 F.3d at 210-11. "The most important factor is the duration of detention." *Id.* at 211. The Court must also consider: (1) whether the detention is likely to continue; (2) reasons for the delay, such as a detainee's request for continuances; and (3) "whether the alien's conditions of confinement are meaningfully different from criminal punishment."[18] *Id.* If a noncitizen's "civil detention under § 1226(c) looks penal, that tilts the scales toward finding the detention unreasonable." *Id* (citations omitted). "And as the length of detention grows, so does the weight that we give this factor." *Id.*

## Duration of Detention

Petitioner has been detained by Respondents since April 8, 2025—approximately one year. (Doc. 1, ¶ 26). "There is no presumption of reasonableness or unreasonableness of any duration." *German Santos*, 965 F.3d at 211. The Third Circuit has

---

[17]    "When an alien is first detained, we can presume that detention is needed to prevent flight or danger to the community." *German Santos*, 965 F.3d at 209 (citing *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 474 (3d Cir. 2015)). "The benefit of detaining these aliens as a class outweighs their short-term deprivation of liberty." *Id.* (citing *Chavez-Alvarez* 783 F.3d at 474). "Eventually, though, that burden 'outweighs a mere presumption that the alien will flee' or pose a danger." *Id.* (citing *Chavez-Alvarez* 783 F.3d at 474-75). At some point, "due process requires the Government to justify continued detention at a bond hearing." *Id.*

[18]    The Court cannot hold a noncitizen's "good-faith challenge to his appeals or applications for relief" against him, otherwise that would effectively punish him for pursuing his legal rights and remedies. *German Santos*, 965 F.3d at 211. "Nor do we hold the agency's legal errors against the Government, unless there is evidence of careless or bad faith." *Id.*

declined to impose a *per se* rule that any detention longer than a specific duration is unreasonable.   However, the Third Circuit finds that, "detention becomes more and more suspect after five months." *Id.* at 211. In *German Santos*, the Third Circuit held that "detention became unreasonable sometime between six months and one year" after it began. *Id.* Here, Petitioner has been detained for approximately one year and the Court finds that the duration of civil immigration detention favors relief at this time.

## Likelihood of Detention

Petitioner has established he is likely to stay detained for some time.  Petitioner's appeal to the Third Circuit Court of Appeals is currently pending.  No final order of removal exists.  Under these circumstances, the Court finds the second *German Santos* factor favors granting habeas relief.  *See Joseph v. Warden*, 2026 WL 497532, at *2 (M.D. Pa. Feb. 23, 2026) ("The second factor, the likelihood that detention will continue, favors granting habeas relief.  Joseph is appealing his removal order to the BIA, and expresses his intent to appeal to the Third Circuit if necessary.").  Similarly, J.G.J. has a pending application for TPS.  Even if his TPS application is denied, he "would have a right to appeal that decision, during which time he would remain unremovable" and that "further attenuates the likelihood of his removal in the reasonably foreseeable future." *Salad v. Dept. of Corr.*, 769 F. Supp. 3d 913, 923 (D. Alaska 2025).

## Reasons for the Delay

The Court finds no party is responsible for any delay. Accordingly, this factor is neutral.

## Conditions of Confinement

The Court next finds that Petitioner's civil immigration detention at FCI Lewisburg "is indistinguishable from criminal punishment." *German Santos*, 965 F.3d at 213. Respondents do not dispute that J.G.J.'s conditions of confinement are indistinguishable from criminal punishment, and J.G.J. submitted the Declaration of Chris Setz Kelly, (Doc. 1-3), which lends support that finding. If a noncitizen's "civil detention under § 1226(c) looks penal, that tilts the scales toward finding the detention unreasonable." *Id*. at 211.

Weighing the *German Santos* factors, the Court finds that Petitioner's civil immigration detention under 8 U.S.C. § 1226(c) has become unreasonable. Petitioner has been detained for approximately one year based on a dismissed criminal charge that predated the LRA's amendment to Section 1226(c). Further, J.G.J. has demonstrated that he is likely to be detained for an extended period of time. Moreover, because Petitioner's detention looks penal, that tips the scales toward a finding that his detention has become unreasonable. The next question is the appropriate remedy.

## Remedy

J.G.J. asks that this Court, rather than an IJ, hold the bond hearing required by *German Santos*. The Third Circuit in *German Santos* found the appropriate remedy for

23

prolonged civil immigration detention under 8 U.S.C. § 1226(c) was a prompt and individualized bond hearing before an IJ.  In that bond hearing, "the Government must put forth clear and convincing evidence that continued detention is necessary."  *German Santos*, 965 F.3d 213.  Because this Court finds Petitioner's continued detention is unreasonable, at the bond hearing required by *German Santos* the Government "must show," by clear and convincing evidence, that Petitioner "would likely flee or pose a danger to the community if released."[19]

Petitioner's request for fees and costs under the Equal Access to Justice Act will be held in abeyance until the termination of this proceeding.  *Michelin v. Warden Moshannon Valey Corr. Cent.*, __ F. 4th __, 2026 WL 263438, at *11 (3d Cir. Feb. 2, 2026) (allowing fees under EAJA in immigration habeas proceedings under 28 U.S.C. § 2241).

---

[19]    At oral argument, both Petitioner and Respondents acknowledged that this Court may conduct the bond hearing.  April 1, 2026, Unofficial Hr'g Tr at 36:23-38:14; *see Centeno-Martinez*, 2025 WL 3157711, at *3 ("The Court will conduct the individualized bond hearing itself as a habeas remedy.").  In *Centeno-Martinez*, Judge Sanchez noted that "[d]istrict courts in this Circuit have exercised that authority, describing it as a legal and logical concomitant of habeas jurisdiction, particularly where delay risks perpetuating the constitutional injury." *Id.* at *3. (collecting cases); *see also Chiguano v. Lowe*, 2025 WL 3187161, at *4 (M.D. Pa. Nov. 14, 2025) (Wilson, J.) ("Federal district courts have the authority to enforce writs of habeas corpus and to conduct bond proceedings in habeas corpus cases brought by immigration detainees.") (citing *Sylvain v. U.S. Att'y Gen.*, 714 F.3d 150, 155 (3d Cir. 2013)).  Upon review, however, the Court believes the appropriate remedy is a prompt and individualized bond hearing before an IJ.  After that hearing, Petitioner may file an amended petition should he wish to raise any procedural infirmities with the IJ's hearing with this Court.

## V.    CONCLUSION

For the foregoing reasons, Petitioner's habeas petition will be granted in part.  Count

I will be dismissed and Count III will be granted.  A separate Order follows.

_____
Robert D. Mariani
United States District Judge